50 CCPA
**Application of Don C. KRAMMES.**

**Patent Appeal No. 6938.**

United States Court of Customs and Patent Appeals.
March 20, 1963.

Richard R. Fitzsimmons, North Canton, Ohio, for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of claims 18, 19, 23 through 27 and 29 of appellant's application for a patent for a floor scrubber. One claim stands allowed.

The following claims are representative:

"18. A unitary floor scrubbing and drying appliance comprising, a water pick up suction nozzle for contact with a floor to be scrubbed, suction creating means, a suction line connecting said suction creating means to said nozzle for sucking up dirty detergent from said floor in the suction air stream, an outer open topped receptacle forming a reservoir for clean detergent solution, a detergent dispensing opening adjacent the bottom of said outer receptacle, an inner collapsible receptacle removably mounted on the open top of said outer receptacle and being nested therein, and means in said suction line for supplying dirty detergent solution into said inner receptacle, the arrangement being

such that said collapsible receptable will float on top of liquid in said outer receptacle when said collapsible receptacle is empty so that the bottom of said collapsible receptacle will follow the liquid level in said outer receptacle as liquid is dispensed therefrom, and as liquid is collected in said collapsible receptacle it will occupy the position formerly occupied by the liquid dispensed from said outer receptacle.

"23. A unitary floor washing and drying appliance comprising, a suction nozzle for contact with a floor to be cleaned, an air pump having a suction inlet, a suction line connecting said suction inlet to said nozzle for picking up liquid from said floor in the suction air stream, a reservoir for cleaning liquid carried by said appliance, means for discharging liquid by gravity from the lower part of said reservoir onto said floor at said nozzle and a dirty water receptacle removably mounted on and nested within the upper end of said reservoir, said suction line including means forming a separable closure for both said reservoir and said receptacle, said closure means being formed to discharge dirty water from said air stream into said receptable."

The references relied on by the examiner and board are:

| | | | |
|---|---|---|---|
| Deutscher | 1,687,283 | Oct. 9, 1928 |
| Breton | 1,690,472 | Nov. 6, 1928 |
| Jerome | 1,892,347 | Dec. 27, 1932 |
| Sussman et al. | 2,333,451 | Nov. 2, 1913 |
| Gerstmann | 2,639,005 | May 19, 1953 |
| Lau (Denmark) | 67,806 | Oct. 4, 1948 |

The invention relates to a unitary device for scrubbing and drying floors. The device includes a main or "dual-function" receptacle which can dispense clean detergent solution to the floor and provides a space for receiving dirty detergent solution from the floor through a suction nozzle arranged for contact with the floor. Clean detergent solution is placed directly in the main receptacle. A collapsible receptacle or bag is dis-

posed in the main receptacle so that it initially floats in a collapsed state on top of the clean solution. A separating chamber is superimposed on the main receptacle in communication with the air stream from the suction nozzle to separate the dirty solution recovered from the floor from the air stream and permit it to fall into the collapsible receptacle or bag. Thus essentially the same space in the main receptacle which holds the clean solution before it is dispensed subsequently accommodates the dirty solution without contaminating any remaining clean solution. The separating chamber is hinged to the main receptacle so that the open end of the collapsible receptacle or bag may be removably supported at the top of the latter.

Deutscher discloses a floor cleaner provided with a rotatable scrubbing brush and a wick disposed in a suction nozzle and in engagement with the floor. The device includes a tank from which cleaning liquid is supplied to the brush by gravity. A motor driven fan draws air through the wick, a suction passage and the top part of a tank in which most of the dirty water drawn from the floor is separated from the air and permitted to fall into the tank.

Breton discloses scrubber and dryer constructions in which dirty water is drawn up from the floor by suction means including a fan and is collected in a receptacle.

Jerome discloses a unitary floor washing and drying machine wherein a flexible, water-impervious diaphragm divides a removable container into a lower chamber for cleaning liquid to be dispensed and an upper chamber for receiving dirty liquid recovered from the floor. The cleaning liquid is supplied by gravity to a rotary brush and means are provided for collecting dirty liquid in a trough where the action of a gear pump "will suck it out" and pass it into the upper chamber above the diaphragm.

Sussman et al. relates to a ball type marking device. Suitable dispensing pressure is imposed on the marking fluid

by inflating a collapsible bag which has its upper end confined between the upper end of the fluid container and a rubber bulb member and can expand into space initially occupied by the ink as the level of the ink drops.

The Gerstmann patent relates to liquid-collecting suction devices for removal of liquids from floors and rugs. It discloses a horizontal tank type vacuum cleaner employing a liquid collecting bag having an outwardly extending flange at its mouth. The flange is clamped between a flanged edge at the open end of the tank or container and a closure head. Suction created by a motor-driven fan or blower unit disposed within the casing draws moisture-laden air into the bag. There, the water separates from the air while the air continues through an opening to the fan and is exhausted.

Lau discloses a unitary scrubbing and drying machine for use on floors or rugs. A wheeled frame carries, in successive superposed relationship, a cleaning-liquid tank, a dirty-liquid tank, and a vacuum tank housing a motor-driven blower or fan. Tie bolts secure the three tanks together. A pump is provided for supplying cleaning liquid from the first tank to scrubbing brushes. A suction nozzle disposed adjacent the brushes sucks air and dirty water from the floor through a hose into the vacuum tank where the entrained water falls into the tank provided for it.

The examiner rejected claims 18, 19 and 29 as unpatentable over Jerome in view of Sussman et al. and either Deutscher or Breton and claims 23 through 27 as unpatentable over the combination of Lau, Jerome, and Gerstmann. These rejections were affirmed by the board, although it reversed a rejection of claims 18 and 19 only on a combination of Jerome with a reference not in the record before the court.

Appellant urges that the washing and drying machine of Jerome uses a liquid pump for removing the dirty liquid from the floor instead of suction creating means operating through a suction noz-zle for contact with the floor being washed. We find no real significance in this argument. It is well known to employ suction producing means in cooperation with a suction nozzle for drawing water from the floor. In Deutscher, Breton and Lau, dirty water is entrained in a suction or air stream and is permitted to separate from the air and pass into a waste tank or receptacle. Nothing unobvious to a person of ordinary skill in the art would be involved in providing Jerome with suction type apparatus for sucking the dirty liquid from the floor and depositing it in the compartment provided above the flexible diaphragm for that purpose.

A feature relied upon particularly for patentability by appellant is the arrangement of his dirty water receptacle or bag relative to the reservoir for clean detergent solution. In connection with that, the board stated in the original opinion:

"* * * Jerome's disclosure is sufficiently clear in that he discloses in Fig. 7 a container 53 divided into an upper, dirty-water receiving chamber and a lower clean-water dispensing chamber by a flexible but substantially water impervious diaphragm 57."

Appellant concedes this statement is correct but emphasizes that the flexible diaphragm of Jerome is not mounted on the open top of the chamber or reservoir for clean solution.

However, the board further stated:

"* * * In our opinion, it is obviously necessary to provide some way to mount the diaphragm 57 and one of the most common and obvious ways of doing so is to make the container in two parts with the diaphragm clamped therebetween."

We agree with that holding of the board. The diaphragm of Jerome has its open end secured to the inner surface of the unitary receptacle to separate the upper compartment into which dirty liquid is discharged from the lower part forming the reservoir for clean solution. Jerome does not disclose any particular

means for securing the diaphragm in place but leaves that to the skill of the art. We think a mechanic of ordinary skill would find it obvious to secure the diaphragm in the desired location by making the receptacle in two parts with the open end of the diaphragm clamped therebetween.

In its decision on reconsideration, the board further discussed this feature as follows:

" * * * The Examiner, in his answer, pointed out how he applied the references and that it was old and well known to mount a flexible bag in the top of a receptacle in the manner disclosed by Gerstmann. This latter relates merely to container structure and assembly means and we pointed out * * * that Lau disclosed the three tank, detachable, assembly with the middle tank or receptacle open to receive the dirty water from the top or separator tank section 5 which is similar to petitioner's [appellant's] three sections * * *. We therefore considered either Lau or Gerstmann a sufficient teaching for making Jerome's container sectional so that his diaphragm may be assembled or removed."

We also agree with this finding of the board. In view of the arrangement of a separate waste water receptacle superimposed directly on the reservoir for clean solution in Lau and of the disclosure of clamping the flanged open end of the flexible diaphragm of Gerstmann against the open end of the tank container, it would be particularly obvious to make Jerome's container in sections with the open end of his flexible diaphragm clamped between the two sections.

Careful examination of the references in the light of the board's decisions and appellant's arguments convinces us that claims 23 to 25, 27 and 29 set out nothing that is unobvious over the prior art. In connection with the specific limitation to means for feeding clean detergent solution by gravity, as set forth in claim 23,

it is noted that such means is used by Jerome. While the same claim also calls for a dirty water receptacle mounted on and nested within the upper end of the reservoir, we find no patentable significance there since the flexible diaphragm of Jerome clearly constitutes a dirty water receptacle and is nested within the upper part of the reservoir for cleaning liquid.

However, claims 18, 19 and 26 raise a further issue. They require that the arrangement of the elements be such that the collapsible receptacle, upon being filled with dirty water moves into the reservoir for clean detergent solution so that it will "occupy the position formerly occupied by" the clean liquid.

While the flexible diaphragm of Jerome does extend into the chambers for cleaning detergent, it is not shown or otherwise disclosed as extending into the chamber to such an extent that the recovered dirty solution can occupy the same space formerly occupied by the clean detergent. The chamber is shown with a side opening, said to be closed by a stopper, displaced from the bottom. The lower edge of that opening is shown no higher than the bottom of the diaphragm. If the opening is used for its apparent purpose of supplying the reservoir with clean detergent solution, the edge of the opening will limit the maximum height to which the reservoir can be filled.

While Sussman et al. might suggest, like Gerstmann, an arrangement for clamping the open end of a flexible diaphragm within the open end of a receptacle, it clearly offers no suggestion that liquid dispensed from a reservoir be returned after use to a flexible receptacle that will expand into the same reservoir space originally occupied by the liquid. We thus do not find that particular arrangement in a floor-scrubber as recited in claims 18, 19 and 26 to be suggested by the prior art and the rejection of those claims will not be sustained.

While we, like the board, have not necessarily limited our order of com-

bining the references to that used by the examiner, we have relied on the references for the same teaching which the examiner and the board found therein. It is well established that mere difference in form of expression of the reasons for finding claims unpatentable or unobvious over the references does not amount to reliance on a different ground of rejection. In re Application of Bush, 296 F. 2d 491, 49 CCPA 752; In re Cowles, 156 F.2d 551, 33 CCPA 1236. Also, we have considered the Danish patent to Lau on the basis of what it discloses, just as we would a domestic patent. Any implication in appellant's brief that Lau's status as a reference is reduced because it is a foreign patent is fully answered by In re Application of Moreton, 288 F.2d 708, 48 CCPA 875, where it is stated that "this type of argument has not borne fruit in this court for the past 30 years."

For the foregoing reasons, the decision of the board is affirmed as to claims 23 to 25, 27 and 29 and is reversed as to claims 18, 19 and 26.

Modified.