53 CCPA

**Application of James B. BOYER.**

**Patent Appeal No. 7562.**

United States Court of Customs and Patent Appeals.
July 21, 1966.
Rehearing Denied Oct. 6, 1966.

W. Philip Churchill, New York City, (Tyler S. Roundy, New York City, of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals,[1]

1. Consisting of Examiners-in-Chief Dracopoulos and Brewrink, the latter writing the opinion, and Acting Examiner-in-Chief Andrews.

adhered to on reconsideration, affirming the examiner's rejection of claims 17–21 in application serial No. 772,034, filed November 5, 1958, for "Smoking Method and Means." No claim is allowed.

The invention is a cigarette or cigarette-type smoking device consisting of a filter tip of non-tobacco filter material and a wrapper of combustible material surrounding a column of tobacco, the wrapper containing perforations or venting inlets distributed along substantially the entire length of the tobacco portion.

Appellant points out in his specification and brief that it has been found that because the amount of drawn-in oxygen for each unit of cross-sectional area is so much greater in cigarettes than in other smoking devices, cigarettes burn at temperatures as much as 200 degrees higher, and that published reports of independent researchers state that, although the specific component has not yet been identified as such, the lung cancer-causing component in smoke tar, as well as other undesirable components, is the result of these very high combustion temperatures.

Thus, according to appellant, one of the great problems facing the cigarette industry for a great many years has been the need for a cigarette which would give the smoker taste, flavor and enjoyment, without at the same time injecting into the smoker's mouth and lungs large quantities of tars and nicotine. Efficient, densely packed filters capable of reducing tars and nicotine to a safe low level had been tried, but were not acceptable to the smoking public, primarily because they were *too* efficient, i. e., a great amount of suction was required to bring flavor or taste through into the smoker's mouth. To reduce this pressure drop, filters were packed more loosely, with the obvious result of increasing the amount of nicotine, tars, and other harmful ingredients in the cigarette smoke entering the mouth and lungs.

Appellant discovered that by using an ordinary non-tobacco filter in combination with holes distributed along the length of the cigarette wrapper, tars and nicotine could be reduced to an allegedly "safe level," i. e., such level as to "significantly reduce cancer risk" according to recognized authorities in the field, and still provide the smoker with a pleasant smoke. The size, location, and number of holes vary, and are interdependent since it is the total amount of air which enters that matters, but three to five "pin-size holes of the same diameter located in the wrapper less than half way along the cigarette length from the lip end produce very satisfactory smoking enjoyment." The function and operation of the invention is further explained in appellant's brief:

These perforations or venting inlets are open at all times, so that when suction is applied to the filter end of the cigarette, air is drawn into the tobacco through these openings throughout the entire length of the cigarette between the filter and the burning zone. When suction is not applied to the filter end of the cigarette, smoke and warm gases accumulated in the tobacco column of the cigarette may escape from the cigarette through the wrapper to the atmosphere.

Openings distributed the full length of the cigarette constantly dilute and cool the smoke in the tobacco column before it reaches the filter. The temperature of combustion is substantially lower. More complete combustion is obtained. And there is less accumulation of deposited and semi-condensed vapors in the column of unburned tobacco at any given instant. Condensates which otherwise accumulate in the unburned tobacco during the early stages are subsequently reheated and to some extent reburned as smoking of the cigarette progresses. Without openings distributed throughout the length of the cigarette, these accumulations of condensates, tars and the like in the remaining tobacco column become progressively more concentrated as smoking of the cigarette reduces the

tobacco column to a smaller and smaller size. The distributed openings greatly reduce this accumulation of undesired constituents in the tobacco all the way through the smoking operation.

In the Boyer cigarette, therefore, the filter tip is no longer required to work on the same kind of smoke—smoke which becomes more and more loaded (and overloaded) with objectionable tars, nicotine and other constituents as smoking of the cigarette progresses. In the Boyer cigarette, an ordinary free drawing filter tip can do its work efficiently all the way down the burning of the tobacco column.

All claims are directed to the above-indicated combination of a filter tip and column of tobacco enclosed by a combustible wrapper containing perforations. Claim 18 is illustrative:

18. A cigarette-type smoking device comprising as an article of manufacture a wrapper of combustible material and a column of tobacco inside said wrapper, said wrapper having a plurality of venting inlets spaced longitudinally from the mouth end of the tobacco column and distributed along substantially the full length of said tobacco column for admitting ambient air through said wrapper to enter behind the burning zone and to mix with and precondition the smoke in said tobacco when there is suction at the mouth end to reduce undesirable components of the smoke which would leave the mouth end of the tobacco column if said wrapper was an ordinary wrapper of a cigarette, and means for extending the total effective mixing length for mixing ambient air with the smoke in said device, said means including a filter of non-tobacco filter material mounted at the mouth end of the device for permitting the ambient air to mix additionally with the smoke after it leaves the tobacco column and before it reaches the mouth of the smoker.

The references are:

Harris       439,004    Oct. 21, 1890

Aghnides    2,923,647    Feb. 2, 1960
(Filed July 9, 1957, as a continuation-in-part of Serial No. 131,382 filed Dec. 6, 1949, now abandoned.)

Miller      3,020,915    Feb. 13, 1962
(Filed Sept. 22, 1958, as a continuation-in-part of Serial No. 671,458 filed July 12, 1957, now abandoned, which is a continuation-in-part of Serial No. 453,254 filed Aug. 31, 1954, now abandoned.)

Through resort to Rule 131 affidavits, appellant has established, apparently to the satisfaction of the Patent Office, a date of invention prior to October 31, 1955, which date, it will be noted, is earlier than the filing dates of the applications issuing into the Aghnides and Miller patents. Much of the more than 350-page record and of the briefs is devoted to a discussion of (1) the factual question of what disclosure was, and what was not, carried forward into each of these patents from their respective parent applications having filing dates prior to appellant's proven date of invention and (2) the legal question of what, if any, of that disclosure *not* carried forward into the issued patents can be relied upon as "prior art." Since we find it unnecessary to decide these questions, they, and the Aghnides and Miller patents, will not be discussed further.

Harris says:

My invention relates to the hollow cylinders or paper wrappers at present used to encircle the tobacco of cigarettes, which are dense and impervious to the atmosphere from without, *and through which the subtle, injurious, and poisonous vapors eliminated from the tobacco within by heat and combustion are unable to escape, and are consequently drawn into the mouth of the smoker,* injuring the lips, drying the tongue and palate, and which, by means of the many nerves opening into the mouth and the tender follicles of the mucuous membrane, are distributed through and absorbed by the sys-

tem to its weakness and injury. *The smoke intermingled with these vapors, if inhaled persistently, is harmful to the throat, sometimes causing cancer,* and passing into the delicate air-cells of the lungs these vital organs become weakened, the nervous system shattered, and indigestion, intestinal sluggishness, heart-failure, heart-palpitation, and blood-poisoning from absorption are some of the evil consequences resulting.

\* \* \* \* \* \*

*The object of my invention is to deprive cigarettes of their baneful effects and render them innocuous,* and this I accomplish by constructing them in the following manner; I encircle the tobacco with a paper wrapper, Fig. 1, having minute perforations or punctures *a a* extending around the cigarette from end to end, Fig. 2, *to admit the atmosphere to commingle with the tobacco-smoke during its entire passage through the cigarette, and at the same time allow egress to any subtle vapors,* and thus prevent the generation of the oils of creosote and nicotianine and the powerful alkaline, nicotine, cause the cigarettes to draw more freely, and remain burning much longer when out of the mouth.

This disclosure, coupled with appellant's admission that filter-tip cigarettes were old as of the time of his invention, constrains us to hold the invention obvious within the meaning of 35 U.S.C. § 103.[2]

In so holding, we are not unmindful of our often expressed view that where an invention, as here, resides in a combination, it is the obviousness of that combination which must be considered, not the parts thereof alone. Appellant, of course, insists his combination is not suggested by any of the references, and relies, as far as the Harris reference is

concerned, primarily on the state of the art, as discussed in his specification and brief, plus such factors as commercial success and acceptance by the industry. In brief, his argument is predicated on various indicia of unobviousness, as recently discussed by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

Appellant also relies on an affidavit, filed under Rule 132, wherein certain characteristics of his invention such as the temperature and composition of smoke in the unburned tobacco portion and in that entering the smoker's mouth are discussed and compared with other cigarettes, all of which is alleged to establish the superiority of the invention over the prior art. The examiner, the board, and the solicitor have disparaged the probative value of this affidavit saying it contains numerous unsupported factual assertions and opinions.

Our view is that taking the affidavit as proving everything appellant contends it does, and considering all of his arguments regarding indicia of unobviousness, we still do not find the invention to be non-obvious within the meaning of section 103.

What appellant has done, as we view the matter, is to perforate the wrapper of an admittedly old filter-tip cigarette. We think both doing this, and obtaining the alleged results, are clearly suggested by Harris. It is clear that Harris made perforations to obtain at least some of the very same goals as appellant, namely, ventilating, mixing, etc., with the ultimate objective of reducing the health hazards of cigarette smoking. As to the coaction between appellant's perforations and filter tip, we thing it perfectly obvious that the filter will have less filtering to do, and hence be less apt to become "overloaded," if there is less filterable material in the smoke, as Harris says

---

**2.** The examiner had rejected all claims as unpatentable over either Aghnides or Miller each taken with or without Harris. The board said:

The rejection "with or without" Harris thus becomes cumulative and we pre-

fer to consider combinations including Harris.

We think legal support for our reliance on Harris alone, under these circumstances, can be found in In re Bush, 296 F.2d 491, 49 CCPA 752.

there will be when a perforated wrapper is used. Stated differently, we think it entirely obvious to one of ordinary skill in this art, whom we must assume had knowledge of Harris, that if perforations reduce the amount of material to be filtered, as is taught by Harris, then the *combination* of a perforated wrapper with a filter will give a cleaner filtered smoke product than using a filter alone. This is all appellant has convinced us he has done, and we are unable to find it to be patentable, notwithstanding the age of the prior art relied upon.

One reason we do not give the Rule 132 affidavit great weight is that it is largely directed to a comparison of the so-called "confined-type cigarette" of Miller and Aghnides, that is, one in which the perforations are all rather close to the filter-tip end of the tobacco column, with the so-called "distributed-type" cigarette of appellant. As we view this case, the issue is whether anything unexpected results from perforating substantially the entire length of tobacco wrapper in the admittedly old filter-tip cigarette. We think not in view of Harris.

As to commercial success, in an invention of this kind we find it difficult to divorce success stemming from the invention, per se, from that resulting from sales promotion of the type used to sell cigarettes, to say nothing of smoking fads so stimulated. That distinction has certainly not been shown here.

Finally, appellant contends the board erred when, in answering an argument before it that Harris teaches away from the invention, it concluded that the reference suggests using a "mouthpiece" with a distributed vent arrangement. The basis of appellant's contention is that the "mouthpiece" mentioned by Harris, while "having one or more orifices situate in the cover of the cigarette just outside the lips of the smoker," is structurally quite different from, and consequently could not suggest the use of, appellant's non-tobacco filter tip. Appellant also points out that Harris states that the then known mouthpiece he refers to "does not embrace, nor could it possibly attain, the objects and results accomplished effectually by my [Harris's] invention."

Our answer to appellant's contention is that we agree the two devices are structurally different, but, as should now be clear, we do not rely upon Harris for suggesting the use of a non-tobacco filter tip in combination with a tobacco column. For that we rely upon appellant's admission of what was old at the time his invention was made.

The decision of the board is affirmed.

Affirmed.

