<sup>54 CCPA</sup>
**Application of Robert Frederic Michel SUREAU, Gilbert Victor Henri Kremer and Victor Marie Dupre.**
**Patent Appeal No. 7678.**

United States Court of Customs and Patent Appeals.
March 16, 1967.

Francis C. Browne, William E. Schuyler, Jr., Andrew B. Beveridge, Steven D. Goldby, Alvin B. Peterson, Joseph A. DeGrandi, Washington, D. C., for appellants.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the rejection of Claims 1, 7, 8, and 9, all claims remaining in patent application serial No. 140,260, filed September 25, 1961, for "New Indazolium Salts."

Claim 1 reads:

1. The indazolium salts of the formulae:

in which the alkyl groups in the 1– and 2– positions are selected from the group consisting of methyl and ethyl, X represents a member selected from the group consisting of chlorine and bromine, the benzene nucleus A is substituted by members selected from the groups consisting of hydrogen, chlorine and bromide atoms and nitro–, cyano–, sulphonamide, lower alkyl, lower alkoxy and lower alkylsulphonyl groups and Z represents a monovalent anion.

The two formulae connected by the double-headed arrow represent but a single compound which, however, is in a state of mesomerism or resonance between the two electron distribution states shown. The remaining claims are:

7. 3–chloro–1, 2–dimethyl–indazolium salts of strong acids.

8. 5–nitro–3–chloro–1, 2–dimethyl–indazolium salts of strong acids.

9. 6–nitro–3–chloro–1, 2–dimethyl–indazolium salts of strong acids.

The application discloses processes for preparing indazolium salts corresponding to the general formula of claim 1, which salts it designates as compounds of formula (I). It further states that the halogen atom, X, in position 3 of of those compounds is remarkably labile, permitting the preparation therefrom, under particularly mild conditions, of a large number of new compounds corresponding to the general formulae designated (IV), (V) and (VI) below:

(IV) (V) (VI)

In the compounds of formula (VI), B is defined as representing "a divalent atom or radical such as $=O$, $=S$, $=N–H$, $=N–$alkyl, $=N–$aryl, $=N–NH$Alkyl, $=N–NH$Aryl." Processes for the preparation of the compounds of all three formulae, (IV), (V), AND (VI), from the claimed compounds of formula (I) are disclosed in the application. It is significant to the issues that compounds of formula (V) are *hydrazones*.

The issues in this case relate only to the disclosures of the *utility* of the compounds or *how to use* them. With respect thereto, the application states:

The compounds of formulae (I), (IV), (V) and (VI) may be used as intermediate products for the manufacture of dyestuffs.

It is not questioned that the claimed compounds are new and unobvious and that the disclosure of how to make them is adequate.

The examiner's rejection as stated in his Answer was:

The claims stand rejected as failing to comply with the requirements of 35 U.S.C. 112 by reason of there being an inadequate disclosure. It is maintained that the statement on page 5 of the specification that "The compounds of formulae (I), (IV), (V) and (VI) may be used as intermediate products for the manufacture of dyestuffs" is not a teaching that would be *sufficient* to *enable* one skilled in the art *to use* the invention as disclosed. [Emphasis ours.] [1]

1. The board opinion does not restate this rejection accurately in saying: "Claims 1, 7, 8 and 9 *stand rejected* as based upon an inadequate disclosure in that there is no teaching of *how* the claimed compounds *are to be used* * * *." (Our emphasis.) The clear disclosure, quoted in the text, supra, is that they *are* to be used "as intermediates in the manufacture of dyestuffs." It seems to us there is a material difference between the rejection as the examiner stated it and its restatement by the board. Since the board gave no indication of making a new rejection at this point, we shall assume the examiner's statement to be the actual rejection.

There is a preliminary question to be disposed of, however, by reason of the following two passages in the board's opinion.

[I] We believe that the disclosure is not only defective in not teaching how to use the invention but *also* in not properly *indicating* the field of utility. In re Nelson et al., 47 CCPA 1031, 1960 C.D. 369, 758 O.G. 233, 280 F. (2d) 172, 126 U.S.P.Q. 242 (Headnote 12). [Emphasis ours.]

[II] Had appellants demonstrated by the citation of proper authorities that hydrazones are a quite conventional intermediate in the making of azo dyes and that their type of compound is of a kind that has been used to make such dyes, so that their disclosure as it stands would be sufficient to fully suggest this use to one skilled in the art, we might have some basis to think *that both the requirements of 35 U.S.C. 101 and 35 U.S.C. 112* had been met. No such authorities have been brought to our attention although this ground of rejection was used in the first Office action and repeated thereafter. [Emphasis ours.]

■ Referring to passage [I], headnote 12 of *Nelson* digests that portion of our opinion in which we adhered to the rule of In re Bremner, 182 F.2d 216, 37 CCPA 1032, that an application must contain "an assertion of utility and an indication of the use or uses intended." This rule, of course, is predicated at least in part on the requirement of 35 U.S.C. § 101, referred to by the board in passage [II], that an invention be "useful." We assume, arguendo, that

that is why the board there referred to that section of the statute.[2]

■ If the board added its own rejection under section 101[3] to the rejection of the examiner under section 112, although it did not designate its "belief" in passage [I] as a new rejection, we rule thereon by holding that there is no support for such a rejection. The specification beyond question *asserts* a use and *indicates* that that use is as intermediates for the manufacture of dyestuffs. We can do no better by way of indicating our views on this point than to express our full agreement with what the examiner said in his Answer:

The Examiner agrees with applicants that the application satisfies the requirements of 35 U.S.C. 101 and In re Bremner, [182 F.2d 216, 37 CCPA 1032] 86 U.S.P.Q. 74, with regard to the assertion of utility. The issue is whether the requirements of 35 U.S.C. 112, with regard to how to use the invention, have been satisfied.

We find, as did the examiner, that that statute and the rule of *In re Bremner,* as repeated in *In re Nelson,* are complied with. We return now to the examiner's rejection under section 112.

The examiner's rejection was based on the proposition that the specification was not sufficient to *enable* one skilled in the art *to use* the invention (the claimed indazolium salts) "as disclosed." The disclosure, quoted above, is to use them "for the manufacture of dyestuffs."

■ Appellants' position is that those skilled in the art, to whom the specifi-

2. In making this assumption we are aware of the possibility that the board's reference to section 101 in passage [II] could be taken as an *agreement* with the statement of the examiner in his Answer that applicants had *satisfied* section 101. See footnote 3. Nowhere does the board clearly predicate rejection on section 101. It may be that it predicated its opinion entirely on section 112 but we feel obliged to express our view on com-

pliance with section 101 in case such an assumption is wrong. The reference to section 101 in passage [II] is certainly ambiguous.

3. There is not a little doubt that it did so since immediately following passage [I] it made a statement which appears to indicate that it believed the alleged deficiency in indicating the "field of utility" to be one under section 112, not under section 101.

cation is addressed, Loom Co. v. Higgins, 105 U.S. 580, 586, 26 L.Ed. 1177; In re Chilowsky, 43 CCPA 775, 229 F.2d 457, 108 USPQ 321; In re Folkers, 344 F.2d 970, 976, 52 CCPA 1269, 1275, having been told to use the claimed compounds as intermediates to make dyestuffs, would know how to so use them.

While admitting that the specification does not *expressly* disclose how to convert the claimed compounds or their derivatives to dyestuffs, appellants argue that certain prior art references on which they rely, Huenig patent 2,832,764 and Badische Anilin French patent 1,129,111, which were available as publications prior to their filing date, show that the art already knew how to do it—that how to do it would be obvious to those skilled in the art. In further support of this argument, appellants point to the fact that when they attempted to obtain a patent on another application (serial No. 154,821, filed Nov. 24, 1961, two months after the instant application) covering the making of dyestuffs from the compounds here claimed, the same examining group of the Patent Office which is examining this application held that claims to processes for making dyestuffs from the herein claimed compounds were "unpatentable over" Huenig and Badische Anilin because of *obviousness* of the processes to those skilled in the art. This apparent inconsistency of the Patent Office—that the process is not obvious from the standpoint of an adequate disclosure but is obvious from the standpoint of rejecting claims—was argued to the examiner several months before he filed his Answer on the appeal to the board. In a brief in reply to the examiner's Answer, appellants, moreover, pointed out this position of other examiners acting on other applications that Huenig and Badische Anilin made the process of making the dyestuffs obvious. The board granted that the Patent Office had taken these diverse positions but found

the argument unpersuasive for reasons which we find unpersuasive.

The only issue we have before us under section 112 is whether appellants' specification would *enable* one skilled in the art *to use* his compounds to make dyestuffs, the compounds themselves being so used as "intermediates." The record shows: that at the time appellants filed their application azo dyes were well known; that azo dyes could be made from hydrazones, including a hydrazone which is an isomer of one of the hydrazones of the claimed compounds; and that the claimed compounds of formula (I) can be converted to hydrazones of formula (V). The references appellants rely on show that, at the time they filed, the art already knew how to make azo dyes from hydrazones by reacting the hydrazones with a conventional organic coupling compound in the presence of an oxidizing agent to form the azo dye. In appellants' other application claiming dyes and processes of making them, this is exactly what the examiner pointed out, saying, "Applicants' process differs only in the use of an indazolone-hydrazone component. * * * No patentable invention is seen in using different, but related materials *in an old process.*" (Emphasis ours.) And further, the examiner said: "the processes are considered to be the same, except for the use of different but related materials."

The solicitor's brief contends that appellants did not argue during the prosecution of the case and prior to the first board decision that the disclosure is sufficient because it teaches that the claimed compounds can be converted to hydrazones and that the latter can be converted to azo dyes by conventional process. He also says the references relied on by appellants, Huenig and Badische Analin, were not relied on prior to the board decision. On this ground he asks us not to consider the argument and the references, citing cases.

We have no quarrel with the holdings of the cases, but the record simply does not bear out the facts alleged by the solicitor. The arguments which were made both before the examiner and the board, and acknowledged by both of them, based on the inconsistent position of the examiner on obviousness of the process in another application, clearly placed both the argument and the supporting references before both lower tribunals. There were *additional* references in *further* support of the argument which appellants tried to place before the board after its initial decision and which it refused to consider, and of which we are asked to take judicial notice. We have not found it necessary to look at the additional references. The argument based on "inconsistency" was clearly an argument that the references we find sufficient taught the obviousness of the process. Under 35 U.S.C. § 112, a specification need not teach that which is obvious to those in the art. *In re Folkers,* supra, and cases therein cited.

The solicitor further argues that by trying to patent the process for making the dyes in application serial No. 154,-821 appellants admit "it was not within the skill of the art to prepare useful dyes from hydrazones of the claimed compounds" and are "estopped from asserting the contrary." We know of no law giving rise to an estoppel out of such a state of facts and the solicitor cites none. Nor do we think appellants were taking an inconsistent position in attempting to patent the process, relying for the patentability thereof on the herein undisputed novelty of the starting materials. Cf. In re Larsen, 292 F.2d 531, 49 CCPA 711 (1961), indicating that the patentability of the process at the time the application was filed was at least debatable.

Finding that the specification is sufficient to comply with 35 U.S.C. § 112, and if necessary to so decide that it complies with 35 U.S.C. § 101, the decision of the board is reversed.

Reversed.

WORLEY, C. J., concurs in the result.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.