57 CCPA

**Application of Vincent J. FRILETTE and Paul B. Weisz.**

**Patent Appeal No. 8267.**

United States Court of Customs and Patent Appeals.

April 9, 1970.

William W. O'Brien, McCarthy, Depaoli & O'Brien, attorneys of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of all of the claims of appellants' application.[1]

The invention relates to a catalytic conversion process and more particularly to a method for selectively conducting a chemical reaction by bringing an organic compound having a linear aliphatic structure into contact with a solid crystalline acid aluminosilicate having a structure of specific intracrystalline dimensions. By virtue of such dimensions, the catalyst allows the passage into or out of its crystalline cavities of only certain molecules, hence reference to them as "molecular sieves." The catalyst is prepared by treating a precursor zeolite, such as chabazite or analcite, having an atomic ratio of silicon to aluminum of at least 1.8 and a pore size of about 5 Angstrom units (A.) with a fluid medium containing a source of hydrogen ions or ions capable of conversion thereto, for example ammonium ions, to produce the corresponding acid aluminosilicate. The catalyst may be used per se or admixed with a "porous matrix." The catalytic processing operations include reactant-selective systems as well as product-selective systems.

Claims 1, 5 and 14 are illustrative:

1. A method for selectively conducting a chemical reaction which comprises bringing an organic compound having a linear aliphatic structure into contact with a crystalline acid aluminosilicate having a pore size of about 5 Angstrom units and a silicon to aluminum ratio of at least 1.8.

5. A continuous method for selectively cracking normal aliphatic hydrocarbons from a mixture of the same with at least one other hydrocarbon selected from the group consisting of isoaliphatic hydrocarbons, naphthenic hydrocarbons, and aromatic hydrocarbons which comprises bringing said mixture at catalytic cracking conditions into contact with a crystalline acid aluminosilicate having a pore size of about 5 Angstrom units and a silicon to aluminum ratio of at least 1.8 wherein the normal aliphatic hydrocarbon component is admitted into the interior of said aluminosilicate to the exclusion of the other hydrocarbon components and removing the resulting products of cracking said normal aliphatic hydrocarbon component from said aluminosilicate.

14. A method for selectively hydrocracking an organic compound having a linear aliphatic structure which comprises contacting said compound and hydrogen under hydrocracking conditions with a crystalline acid aluminosilicate having a pore size of from 4 to 6 Angstrom units and a silicon to aluminum ratio of at least 1.8.

Claims 2–4 are similar to claim 1 and call for a mixture of reactants. Claims 6–13 depend from claim 5 and further define the aluminosilicate. Claim 15 is similar to claim 14 and recites hydrocracking a mixture of compounds. Claims 16–23 depend from claim 15 and further define the catalyst. Claims 3, 4, 12, 13, 22 and 23 are directed to embodiments wherein the aluminosilicate catalyst is used in combination with a porous matrix.

The prior art reference relied upon is:

Fleck and Wight (Fleck) 2,962,435 November 29, 1960

---

1. Serial No. 266,186 filed March 19, 1963 for "Conversion Process" alleged to be a continuation-in-part of serial No. 754,915 filed August 14, 1958, now Patent No. 3,140,322, issued July 7, 1964.

Fleck discloses the addition of a porous matrix, such as an inorganic oxide, to a crystalline aluminosilicate.

Appellants' own patent, No. 3,140,322, noted supra, discloses aluminosilicate catalysts having an atomic ratio of silicon to aluminum of 1 to 5 and pore sizes including 5, 10 and 13 Angstrom units. The ammonium form of the aluminosilicate is disclosed along with various other forms based on ions such as silver, hydrogen, zinc and lithium. Natural zeolites, such as chabazite and analcite among others, are shown along with synthetic zeolites. Illustrative of the claimed subject matter is claim 2:

> 2. A process for selectively conducting an organic chemical reaction which comprises passing a reaction mixture consisting of components of different molecular shapes over a crystalline aluminosilicate zeolite molecular sieve material having uniform interstitial dimensions sufficiently large to admit at least one of said components but sufficiently small to exclude at least one remaining component and bearing within the interior thereof an added catalyst, active in promoting said reaction, introduced into the zeolite subsequent to formation thereof, effecting a catalytic conversion of the component material admitted to contact with said catalyst within the interior of said zeolite to convert the same to chemical species distinct from said admitted component and of a molecular shape capable of passing from the interior of said zeolite and simultaneously withdrawing, without substantial change in pressure of the system, said chemical species from the effluent stream passed over said zeolite.

Claim 3 of the patent depends from 2 and limits the reaction to catalytic cracking of a hydrocarbon mixture.

Dependent claim 4 requires that the aluminosilicate have catalytically active acidity in its interior. Claim 7 also depends from claim 2 and specifies a pore size of 5 A. Claim 16, dependent upon claim 2, limits the reaction mixture to one of hydrogenatable organic compounds and hydrogen.

The examiner rejected claims 1–23 as "within the scope of the patent claims * * * alone or in view of Fleck * * *," presumably on the basis of double patenting. In making the rejection, the examiner felt that "recourse to the specification" was proper in interpreting the patent claims and that a terminal disclaimer would be ineffective to avoid the rejection. Claims 1 and 2 were also rejected as too broad on the ground that since no reaction conditions had been recited, it was probable "that no chemical reaction would occur at low temperatures and pressures."

The board affirmed the double patenting rejection and compared the claims involved, making recourse, as did the examiner, to the patent specification. Although acknowledging that appellants filed a disclaimer limiting the term of any patent granted on the application to that of the parent patent, the board felt that

> * * * since the differences between the claims on appeal and those of the patent are no more than minor differences in scope, the law in In re Siu, 42 CCPA 864; * * * 222 F.2d 267;

> * * * 105 USPQ 428 is applicable herein and the terminal disclaimer is ineffective to overcome the rejection on double patenting.

The board also affirmed the undue breadth rejection of claims 1 and 2 and extended it to cover claims 3 and 4. Indicating that the statutory basis was 35 U.S.C. § 112, the board added that

> * * * it is not apparent that all organic compounds having a linear aliphatic structure, regardless of molecular size, could enter pores of this size [5 Angstrom units] and contact the catalyst located therein.

The parties agree that this court's most recent decisions in the area of double patenting make it clear that the

effect of the presence of the terminal disclaimer is to limit the inquiry to whether the same invention is twice claimed. If so, the terminal disclaimer cannot avoid the rejection. Appellants and the solicitor both urge that the court look only to see "whether the differences between the patented claims and those applied for are sham or real, semantic or actual," citing In re Plank, 399 F.2d 241, 55 CCPA 1400 (1968).

Appellants contend that the differences are real and actual. They state that the appealed claims call for a crystalline aluminosilicate catalyst which is characterized by three specific limitations, namely, (1) that the silicon to aluminum ratio be at least 1.8; (2) that it be in the acid form; and (3) that it have a pore size of about 5 Angstrom units. No single claim of the patent, it is urged, defines the crystalline aluminosilicate as having the above three characteristics.[2]

The solicitor counters by arguing that the respective claims are directed to the same invention when full consideration is given to what these patent claims actually *mean*. The verbal differences, it is submitted, are shown to be without substance. Basically, it is the solicitor's position that reference to the respective specifications in order to understand the pertinent terminology of the claims demonstrates that the language of the appealed and the patent claims has the same meaning.

▪ Admittedly, the appealed claims find support in the written disclosure of the patent, for appellants so urged during prosecution of this application which is, allegedly, a continuation-in-part of the application which matured into the patent. The patent claims, which generally can be considered as being broader than the appealed claims in the three characteristics discussed, also find support in the same portions of the specification of the patent supporting the appealed claims. Yet that does not necessarily mean that the same invention is being twice claimed. Recently, this court stated in In re Vogel, 422 F.2d 438 (decided March 5, 1970):

> A good test, and probably the only objective test, for "same invention," is whether one of the claims could be literally infringed without literally infringing the other. If it could be, the claims do not define identically the same invention.

There we said that "same invention" means identical subject matter. Applying the test of *Vogel* to our inquiry of whether the same invention is here twice claimed, we must conclude that it is not. The patent claims could be literally infringed without infringing the more restrictive claims on appeal here. The rejection of claims 1–23 based on double patenting is, therefore reversed.

▪ Turning to the rejection of claims 1–4 under 35 U.S.C. § 112, we find that the examiner neglected to set forth the statutory basis therefor, indicating merely that the rejection was predicated on the view that the claims were "too broad" in failing to recite reaction conditions since it was probable "that no chemical reaction would occur at low temperatures and pressures." The board's factual basis for sustaining the examiner is best expressed in its unsupported but also unchallenged allegation that

> * * * it is not apparent that all organic compounds having a linear aliphatic structure, regardless of molecular size, could enter pores of this size [5 Angstrom units] and contact the catalyst located therein.

Although the board cited the statutory section allegedly relied upon, it failed to apply the terms of that section of the statute to the facts at bar. Thus, while citing 35 U.S.C. § 112, the board's discussion of the factual grounds for the re-

2. There are other differences between the appealed claims and those of the patent, but the parties appear content to treat only those set out here.

jection indicates, as does the examiner's, a concern with alleged inoperativeness or lack of utility of embodiments embraceable within the scope of the language of the claims. Yet such concern could possibly warrant treatment under 35 U.S.C. § 101 rather than 35 U.S.C. § 112.[3] Moreover, due to the failure to apply the terms of 35 U.S.C. § 112 to the rejection, if in fact the board is relying on 35 U.S.C. § 112, we are unable to ascertain with the required preciseness whether the alleged deficiency arises under the first paragraph of § 112 in that the Patent Office feels that appellants have not provided an "enabling" disclosure or whether it arises under the second paragraph of § 112 because of a lack of preciseness and definiteness of claim langauge.[4] In view of our recent remarks in In re Borkowski, 422 F.2d 904 (decided March 12, 1970) such considerations and distinctions are of importance. Additionally, the parties' arguments herein are of little help in clarifying the board's position.

In view of the above, it is our opinion that the statutory bases relied upon have not been set forth with sufficient clarity and lack of ambiguity to permit a proper determination of the legal issues here.[5]

Accordingly, the Board's decision affirming the rejection of claims 1–23 on the ground of double patenting is reversed. The case, insofar as the rejection of claims 1–4 under 35 U.S.C. § 112 is concerned, is remanded for clarification and further proceedings consistent with this opinion.

Reversed and remanded.

3. Under 35 U.S.C. § 101, for example, the question might be whether the accuracy of appellants' statement that "aluminosilicates having a pore size of about 5 Angstrom units have the ability to selectively differentiate the normal aliphatic molecules from all others," is supportable by evidence once having been properly challenged. See, e. g., In re Buting, 418 F.2d 540, 57 CCPA (1969).

4. The failure to apply the terms of a statutory section to the facts of the rejection illustrates the problems arising from use of the characterizations "too broad" or "undue breadth" because of the fact that these terms have no fixed meaning in patent law and mean different things to different people.

5. Cf. In re Wheeling, 413 F.2d 1187, 56 CCPA 1429 (1969).