58 CCPA

**Application of William BOON.**

**Patent Appeal No. 8398.**

United States Court of Customs and Patent Appeals.

April 1, 1971.

Rehearing Denied May 20, 1971.

James M. Heilman, Heilman & Heilman, Washington, D. C., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and NEWMAN, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

Boon appeals from the decision of the Patent Office Board of Appeals which affirmed the rejection of claims 1–16 in his application[1] for an "Air Conveyor System." No claim has been allowed.

## THE INVENTION

The subject matter for which appellant seeks protection may best be understood by reading claim 1 (which is representa-

[1]. Serial No. 503,272, filed October 23, 1965.

tive of one group of claims rejected on a particular ground) with reference to the following illustration from the disclosure:

FIG. I.

[A3897]

---

Claim 1 reads as follows [parenthetic material corresponds to the illustration shown above—paragraphing ours]:

1. Improved pneumatic conveying system for bulky material comprising in combination,

(1) a plurality of spaced apart collecting stations [10 and 20] for a bulky material,

(2) a receiving station [30] for the bulky material,

(3) conduits [6 and 24] of a suitable width to convey the bulky material providing communication between said collecting stations and said receiving station,

(4) means [blower 60 drawing on chamber 30, in conjunction with vents 5 and 23] for passing a conveying airstream through said conduits from said collection stations to said receiving station,

at least one of said collecting stations being characterized by having

(5) a holding area [e. g. 40] defined by a duct positioned between,

(6) an exterior door [8], and

(7) an interior door [11] adjacent said conduit.

Dependent claim 2 typifies a second grouping for rejection purposes, and adds the following qualification to parent claim 1:

(8) automatic means are provided to open and close said interior doors only when all said conduits are free from other bulky material.

Various other claims recite the material to be conveyed as "trash" (claims 8 and 12) or "non-particulate items"

(claim 16). The specification mentions soiled linen, laundry, linen, trash, and the like "such as accumulates in institutions such as hospitals and the like." Appellant's brief indicates that the "essence" of the invention is that "holding areas are provided at the different collecting stations to hold the material until it can be best handled by the conveying air system."

## THE REFERENCES

Buzzell et al.[2] is drawn to "an apparatus for and method of conveying concrete or other material." Basically, what is disclosed is a system for conveying the output of a set of two concrete mixing units to a single material discharge outlet. This conveyor system is connected to a source of positive air pressure and other means (e. g. condensing steam) are used to aid in the maintenance of a pressurized system which is used to facilitate discharge of the material from the discharge line. In order to prevent loss of pressure when the material is initially made to enter the conveying system and also to provide for a practically continuous outflow of discharged material, the two concrete mixing units are operated and their contents added to the conveying system in alternating sequence, introduction to the pressurized discharge line being accomplished by means of a sliding valve arrangement between two hoppers which are alternately being filled with concrete. To further facilitate discharge and minimize loss of pressure, the hoppers leading to the sliding valve are not filled gradually but rather a "hopper within a hopper" is provided which has a counterweighted bottom panel which only opens when the first hopper is filled to a predetermined level.

Hughes[3] is directed to a programmed system for removal and disposal of ash from coal boilers. The patent discloses a series of boilers each provided with a hopper and a motor-driven rotary feeder-gate which, when activated, deposits any ashes which may have accumulated in the hopper into a vacuum conduit for disposal. Means are provided for assuring that there is complete ash removal from one gate position before the next rotary gate motor in sequence is actuated.

## THE REJECTION ON PRIOR ART

The Board of Appeals summarized the issues here as follows:

Claims 1, 4, 5, 7, 8, 12, 15 and 16 stand rejected as being unpatentable over Hughes in view of Buzzell et al., under 35 U.S.C. 103. The Examiner considers the rotary feeder (11, 12 etc.) at each station of Hughes as the equivalent of a double door in the claimed combination and takes the position that it would be obvious, in view of the Buzzell et al. showing of alternately opening double doors to prevent loss of vacuum, to substitute such doors for the pocket feeders of Hughes.

Appellant argues that neither of these references discloses a double door and neither is pertinent to appellant's disclosure even if they showed his exact structure, in that they are from a non-analogous art, stressing his large, open unobstructed duct between his doors, as compared with the rotary vane type feeders of Hughes, and the semi-liquid condition of the material fed in Buzzell et al., as contrasted with the bulky material fed in the instant case. He also argues in substance that the different structures of the two references render their proposed combination unobvious.

The board then went on to affirm the examiner and respond to appellant's arguments. What was said bears repeating:

We share the Examiner's view that Hughes' rotary gate feeders are in the nature of double doors since adjacent vanes of each feeder between which the material to be fed is located

---

2. U.S. Patent 894,813, issued August 4, 1908.

3. U.S. Patent 2,706,136, issued April 12, 1955.

isolate the hopper from the conduit. Said vanes are in substantially the same relation to the suction applying means as in the instant case, and the space between said vanes is a holding area and constitutes an air lock.

The type of doors and the size of the holding area are obviously dictated by the amount or the size of the material or materials to be conveyed. It cannot be validly contended that appellant is the first to convey bulky material. Even Webster's Unabridged Dictionary tells us of the "pneumatic dispatch: a system of tubes through which letters, packages, and related matter are sent by air pressure". As was stated by the Court in Crown Machine & Tool Co. v. KVP-Sutherland Paper Co., [297 F.Supp. 542] 155 USPQ 309, at 317,

"Vacuums are used for moving many different types of materials and a mere change of usage is not the sort of nonobvious difference upon which a patent may be obtained."

It is manifest that where packages are to be transmitted there must be a sufficient holding area therefor and appropriately spaced inner and outer doors for the air lock. While a better example of an air lock with separate spaced doors than Buzzell et al. might have been cited, this reference nevertheless teaches the broad concept of this feature. We are of the opinion that only routine technical skill of persons having ordinary skill in the art would be required in adapting a pneumatic system such as illustrated in Hughes for the feeding of bulky articles, whatever their specific nature might be. Providing a downwardly inclined floor, as recited in claims 4 and 7, to facilitate feeding of the articles from the holding area to the feeding conduits, is an elementary expedient and the mounting of the exterior door on a wall of a building, as recited in claims 5, 15 and 16, is an obvious matter of choice, the night bank-depository being a common example of the latter.

For the preceding reasons, the rejection of claims 1, 4, 5, 7, 8, 12, 15 and 16 is sustained. Our amplified reasons in support of our affirmance is not a new ground of rejection. In re Krammes, 50 CCPA 1099, 314 F.2d 813, 794 O.G. 30, 1963 C.D. 354, 137 USPQ 60. In re Boyer, 53 CCPA 1497, 363 F.2d 455, 836 O.G. 776, 150 USPQ 441.

■ Appellant makes substantially the same arguments here as he did below but additionally objects to the board's "amplified reasons in support" of the affirmance as constituting a new ground of rejection to which he was denied the right to respond. With regard to the latter argument, while we find the cases cited in the board's opinion to be of questionable support, we nevertheless agree that no new ground of rejection was there put forward. Those "amplified reasons" do, of course, rely on additional facts, not previously in the record, of which the board took notice. However, we are satisfied from our review of the record that, even when such facts are included, the "evidentiary scheme" supporting the board's position on this rejection does not differ in substance from that of the examiner. The references to the pneumatic dispatch as defined in the dictionary and to the night bank-depository may, therefore, be said to have played the type of minor role which this court recently indicated was proper for facts which are judicially noticed. See In re Ahlert, 424 F.2d 1088, 57 CCPA 1023 (1970).

■ Ordinarily, citation by the board of a new reference, such as the dictionary in this case, and reliance thereon to support a rejection, will be considered as tantamount to the assertion of a new ground of rejection. Compare In re Ahlert, *supra*. This will not be the case, however, where such a reference is a standard work, cited only to support a fact judicially noticed *and*, as here, the fact so noticed plays a minor

role, serving only "to 'fill in the gaps' which might exist in the evidentiary showing made by the Examiner to support a particular ground for rejection." *Ibid.* Under such circumstances, as we held in *Ahlert,* an applicant must be given the opportunity to challenge either the correctness of the fact asserted or the notoriety or repute of the reference cited in support of the assertion. We did not mean to imply by this statement that a bald challenge, with nothing more, would be all that was needed to warrant reopening of the prosecution so that the applicant could respond. Clearly, such a rule would effectively destroy any incentive on the part of the board to clarify or justify a position taken by an examiner through the artful use of facts judicially noticed. We feel it to be perfectly consistent with the principles governing procedural due process to require that a challenge to judicial notice by the board contain adequate information or argument so that *on its face* it creates a reasonable doubt regarding the circumstances justifying the judicial notice. Appellant's correspondence before the Board of Appeals following its decision in this case, is not even reproduced in the record before us. We therefore have no basis to conclude anything other than that there could not have been a proper challenge.

■ As to the merits of the rejection itself, we also have considered appellant's arguments relating to the issues of nonanalogous art, propriety of combining the disclosures, and the standard by which the Board of Appeals judged the claims before us, but we are unconvinced that the decision below was improper. We adopt as our own the reasons quoted above in support of that decision.

## THE SECTION 112 REJECTION

Claims 2, 3, 6, 9, 10, 11, 13 and 14 differ from the set of claims previously discussed as rejected on prior art grounds only in that they include the recitation of automatic "programming" means as indicated earlier. The examiner stated in his answer that, had these claims not

been objectionable under 35 U.S.C. § 112, they "otherwise would not differ from the claims above and would have been rejected on the same grounds as those claims."

The articulated reason for rejecting these claims under section 112 was that "no structure is disclosed for the automatic control means claimed." In fact, the specification disclosure contains no recitation of structure on this point and no specific structure may be inferred as implicitly indicated by the broad language of the claims. Appellant has carefully and expressly left this detail to the skill of those who would practice this aspect of his invention. The specification merely states that the preferred embodiment of the invention utilizes "in conjunction with the system described a conventional programming electrical relay system which is electrically connected to the various doors to actuate them at the proper time." A pushbutton is shown in a detailed illustration of one of the receiving stations and is said to transmit an electric signal to the programming system when pushed, which signal will, if the conveying system "is not in operation and is free of other bags or material," permit the interior door at that station to be opened thus introducing the awaiting material into the conveying system. The specification indicates expressly that the programming unit is conventional and is not shown.

The board clearly felt that this disclosure did not satisfy the requirements of the first paragraph of § 112. However, from the record we are unable to ascertain precisely what requirement it was felt had not been met. At first it appears that their concern was centered around the "how to make and use" or so-called "enablement" provisions of the first paragraph. Emphasizing that "no means of any kind are described in the specification or illustrated in the drawings," the board first held that the broad "means" recitation in the original claims "are not sufficient to teach how such means are electrically or mechanically constructed and how they are physically

connected to the various elements to sequentially operate the latter."

Appellant's sole traverse of this rejection appears primarily aimed at the above-stated ground and raises the point that implementation of what he suggests would be obvious to one of ordinary skill in this art. His position is as follows:

Since appellant proposes to use well known conventional systems, there is no need for burdening this particular application with known automatic operating sequences. Among those available and well known to the public is the sequencing system of Hughes cited in this action. The same comment applies to claims 6, 9, 10, 11, 13, and 14. Since no art has been cited against this group of claims, all of them would appear to be allowable.

The opinion of this court in In re Sureau, 373 F.2d 1002, 54 CCPA 1203 (1967) is cited for the proposition that "a specification need not teach that which is obvious to those in the art."

The Patent Office has not questioned the correctness of appellant's assertion and, of course, cannot question the correctness of the broad proposition of law for which the *Sureau* case is said to stand. What is contended, however, is that appellant's disclosure is not sufficiently specific and detailed in this area to establish proper support for the claim terminology in issue. Prior decisions of this court such as In re Diedrich, 318 F.2d 946, 50 CCPA 1355 (1963), In re Chaplin, 245 F.2d 249, 44 CCPA 941 (1957) and Brand v. Thomas, 96 F.2d 301, 25 CCPA 1053 (1928) were cited by the board for the proposition that a disclosure is not adequate when it requires experimentation at great length, too much ingenuity, skill and industry, or speculation by one of skill in the art desiring to practice the invention.

As correct as such a proposition might be, we are left unsure as to what the board was contending by its submission. We have already noted that appellant's position that automatic "programming" of his concept would be within the skill of the art has not been contested. Is the board contending that the "enablement" provisions of the first paragraph require more? We cannot tell. A further point we find raised by the objections of the board, but not adequately touched on by either side, and stemming from the fact that appellant sets out the automatic programming system as the "preferred embodiment" of his invention, is whether the "best mode" requirement of the first paragraph of § 112 might necessitate the inclusion of a greater degree of specificity than that necessary to comply with the "enablement" requirement.

The solicitor, on the other hand, has argued that "in the absence of any disclosed structure capable of carrying out the function of the involved 'means' clauses, those clauses can have no meaning under the third paragraph of § 112," citing the following statement in In re Jones, 373 F.2d 1007, 54 CCPA 1218 (1967): "Appellant cannot positively claim what he has not disclosed and he has disclosed no means." This argument appears to raise the issue as to whether the language of the *third* paragraph of § 112 may be viewed as requiring the disclosure of at least one specific means in order to support a means clause in a claim.

We decline to speculate as to what specific grounds the board intended in affirming this rejection or regarding the possible position the parties might take on the various issues we have indicated could be present here. Accordingly, we remand this case for clarification of this rejection and further consideration of all issues regarding these claims. *Cf.*, In re Frilette, 423 F.2d 1397, 57 CCPA 991 (1970).

## SUMMARY

The decision of the Board of Appeals with regard to claims 1, 4, 5, 7, 8, 12, 15 and 16 is affirmed. The case, insofar as the rejection of the remaining claims is concerned, is remanded.

Affirmed-in-part and remanded.