Affirmed.

34 C.C.P.A.(Patents)

### Application of HILL.
### Patent Appeal No. 5277.

Court of Customs and Patent Appeals.
April 22, 1947.

Rehearing Denied May 29, 1947.

Keith Misegades, of New York City (Rolf E. Schneider, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the examiner finally rejecting claims 2 and 3 of an application for a patent for "Improvements in Dyed Textiles and Methods and Compositions for Producing Same."

The claims read as follows:

"2. A dye bath for textiles comprising an emulsion of a water-immiscible pigmented lacquer distributed in a continuous aqueous phase, the binder of the lacquer comprising a carbamide formaldehyde resin soluble in organic solvents, and comprising not over 2.5% of the total dye bath, and being present in at least twice the volume of the pigment, the solvent of the lacquer being no more volatile than toluol at 25°C.

"3. A dye bath for textiles comprising an emulsion of a water-immiscible pigmented lacquer distributed in a continuous aqueous phase, the binder of the lacquer comprising a carbamide formaldehyde resin soluble in organic solvents, and an alkyd resin compatible therewith, said resins comprising not over 2.5% of the total dye bath, and being present in at least twice the volume of the pigment, the solvent of the lacquer being no more volatile than toluol at 25°C."

The subject matter of the invention may be understood from a reading of the claims.

The application was prosecuted under what is known as dual prosecution, claims 1, 2 and 3 before Division 50 and claims 4 to 14, inclusive, before Division 38.

The claims of the first group were rejected by the Primary Examiner as unpatentable over the patent to. Jenett et al., 2,196,669, April 30, 1940, and he further rejected claims 2 and 3 as being indefinite in the use of the word "carbamide."

In his specification appellant states that he obtains best results with the "carbamide formaldehyde resins, including the resins made from formaldehyde and urea, thiourea, melamine, and other urea derivatives and substituted ureas."

The examiner considered the wording of the quotation objectionable for the stated reason that the meaning of the term "carbamide" is distorted. One of the reasons for his holding was that in Webster's New International Dictionary, Second Edition, carbamide is defined as being synonymous with the word "urea." He then stated "Melamine is not urea." The examiner pointed out that no examples were set forth in the specification to make clear the meaning of "urea derivatives" and "substituted ureas," stating that the scope of the term "derivative" is dubious and that certain "substituted ureas" such as tri-ethyl urea and tetra-ethyl urea do not form resins with formaldehyde. He, therefore, held the above quotation from the specification to be objectionable as placing a distorted meaning on the word "carbamide." By reason of those views he held claims 2 and 3 to be too indefinite, citing the case of In re Hegan, 97 F.2d 86, 25 C.C.P.A. (Patents) 1182, to support his statement that "* * * a definition in the specification which distorts the meaning of an accepted term renders the claims confusing."

From the decision rejecting claims 1, 2 and 3 appeal was taken to the Board of Appeals.

Claims 4 to 14, inclusive, were rejected by the examiner as unpatentable over the patent to Jenett et al., supra, and the patent to Jennings, 2,334,199, November 16, 1943, and from his decision appellant appealed.

The Board of Appeals held that all of the claims were patentable over the prior art and allowed claims 1 and 4 to 14, inclusive. The examiner's decision was affirmed by the board with respect to claims 2 and 3 on the ground that they are indefinite and, therefore, do not define the invention.

The issue here is whether or not the claims are indefinite and whether or not they do or do not define the invention.

Appellant contends that a basis for a generic claim is contained in the specification in a recital of the resins he prefers as reaction products of formaldehyde with carbamides, such as urea, thiourea, melamine, urea derivatives and urea substitution products. He argues that in that language he had reference to a common property possessed by those named substances and that "* * * there is little dispute that this property was the similarity of chemical structure and behavior." Therefore, he states, he properly used the indefinite article with the word "carbamide."

It is said by appellant that the word "carbamide" is applied primarily to the isomer of urea and is recognized as being the simplest in a series of homologues and that in his application appellant so used it.

The tribunals below held "carbamide" to be a term that does not relate to a group or series of compounds, but is confined to the single definite compound "urea."

Appellant in his brief states that the examiner, in his rejection on the ground of indefiniteness, relied on the dictionary definition of the word "carbamide" and points out that in the case of Application of Jones, 149 F.2d 501, 32 C.C.P.A. (Patents) 1020, we held that in technical questions, such as this, standard textbook definitions are preferable to those found in general dictionaries.

The Board of Appeals in its decision denying appellant's request for reconsideration stated that according to the chemical textbooks available "carbamide" is a definite individual compound and noted that appellant had cited no such authority to the contrary.

In order to sustain appellant's contention that he is entitled to a generic

claim, as aforesaid, such claim must accurately and definitely define his invention. In re Hegan, supra. Unless an invention is capable of accurate definition, it cannot be held to be patentable. United Carbon Co. et al. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232.

Had appellant limited his claims to "carbamide formaldehyde resin" in all probability they would have been allowed, but in that event they would be specific to only one of the resins. Instead it may be noted that the claims call for "a carbamide formaldehyde resin" and if the recital in the specification heretofore quoted does not accurately define "carbamide resins" the claims must be held to be indefinite.

In support of his position appellant quotes from Funk & Wagnalls New Standard Dictionary as follows:

"Carbamid, *n. chem.* Urea or one of its isomers.

"urea, *n. chem.* 1. A very soluble colorless crystalline compound $(CO(NH_2)_2)$ * * * 2. A derivative of urea." (Italics quoted)

And from the Webster New Internationl Dictionary as follows:

"carbamide, *n.* Also -mid. *Chem.* Urea.

"urea, *n. Biochem.* a. A very soluble crystalline nitrogenous compound, $CO(NH_2)_2$. * * *—called also *carbamide* * * * b. Hence, any of various derivatives of the above compound: as, alkylated *ureas.* (Italics quoted)

Appellant stated that those definitions recognize the word "urea" as having a broader meaning than a single specific chemical compound and, therefore, his use of the expression "a carbamide," as called for in the claims, should not be objectionable. While he recognizes the rule that inadvertent granting of claims to one inventor is of itself not a reason for granting claims to another, citing the case of In re Engelhart, 40 F.2d 760, 17 C.C.P.A. (Patents) 1244, he argues in his brief that

"* * * an established practice of the Patent Office evidenced by five or six freshly issued patents from the same art ought not be changed without strong reasons."

We find nothing in the record here which shows any "established practice" opposed to the reasoning in the decisions below. The examiner stated that in the case of Ex parte Clifford, 63 USPQ 19, an analogous question was involved. In that case it was sought to define the term "aliphatic" in a manner to include compounds not normally considered to be "aliphatic." The board there held that to be improper.

The examiner stated that it had been held by the Board of Appeals in an application, Serial No. 284,213, assigned to appellant's assignee and prosecuted by the same counsel as appears herein, the expression "a carbamide" was indefinite based on substantially the same definition as here. Counsel for appellant has not shown that statement to be inaccurate.

While it is trite, as is contended here, to say that a patent specification may explain the language of the claim, it is incorrect, as pointed out by the solicitor in his brief, to say "* * * the specification may distort a term to mean something it does not mean."

We do not think we would be justified in reversing the decision of the board in view of the fact that no standard work on chemistry has been cited to us, nor have we been able to find one which would support appellant's position, even though the dictionary definitions cited by him would seem to support his contention. According to available chemical authorities there is only one "carbamide" and, accordingly, we are compelled to hold that claims 2 and 3 do not accurately define appellant's invention.

The decision appealed from must be affirmed.

Affirmed.